## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **21-CR-00724-CRC** |
| | **:** | |
| **MALIK COUNTEE THOMAS,** | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Malik Countee Thomas, be detained pending trial. The government seeks THOMAS's detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (Felony that is not Otherwise a Crime of Violence that Involves the Possession or Use of a Firearm) and 18 U.S.C. § 3142(f)(2)(A) (Risk of Flight).

A rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(B) applies based on the grand jury's indictment, which includes "an offense under section [18 U.S.C.] 924(c)."

The government is prepared to proceed to argument at the initial appearance scheduled on December 30, 2021. Under the Bail Reform Act, the Government may proceed by way of proffer. *See, e.g., United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013). Pursuant to the facts, circumstances, and authorities presented herein and at the detention hearing, the defendant should be detained.

## BACKGROUND

### Factual and Procedural Background

This investigation focuses on the open-air drug markets by the Exxon and Shell gas stations, which face each other and are located at 4665 South Capitol Street SW and 4700 South

Capitol Street SE, Washington DC, respectively.  Individuals have been routinely observed by law enforcement to operate on a daily basis at the markets conducting hand-to-hand transactions in controlled substances including marijuana.  Individuals will loiter in front of and inside the store front of the Shell Gas Station and sell controlled substances by signaling a smoking gesture with their hands as well as waving clear bags with large amounts of green leafy substance to the gas station customers.  Individuals will also obscure their controlled substances by carrying the controlled substances in colored plastic bags with handles, handbags, backpacks, and from parked vehicles that often remain parked at the Shell Gas Station for several hours at a time.  Once a potential customer is procured, these individuals will then measure and distribute the controlled substances to their customers in plain view.

The area has become the site of extraordinarily concerning violence.  The area has been the location of several shootings and other violent criminal activity apparently relating to the drug activity on site, and recent incidents include:

a.  October 12, 2021 – Gunfire at the Shell gas station resulting in property damage;

b.  October 25, 2021 – Armed robbery at SC Discount Grocery and Tobacco at the Exxon gas station;

c.  October 27, 2021 – Armed robbery at the Shell gas station;

d.  October 28, 2021 – Contact shooting at the SC Tobacco Shop at the Exxon gas station;

e.  November 22, 2021 – Homicide at the Shell gas station, where the decedent brandished a firearm in an apparent attempt to rob individuals selling

marijuana by the Exxon gas station and then fled to the Shell station, where he was fatally shot.

There have been numerous MPD firearm and drug recoveries and ensuing charged felony criminal cases against individuals loitering outside and around the Shell and Exxon gas stations in recent months.

### October 28, 2021 Arrest

On Thursday, October 28, 2021, at approximately 11:55am, in front of the Shell gas station at 4700 South Capitol St SE, MPD Officers Perez and Varone with assistance of other member of the Crime Suppression team were working the day work tour of duty in full uniform, driving a marked police vehicle.  Officers were assisting 7D Patrol units in reference to a recent shooting that occurred less than five minutes prior in front of 4675 South Capitol St SW, the SC Discount Tobacco and Groceries, which had claimed a shooting victim.  As officers drove into the Shell parking lot, they observed a large group of individuals begin to scatter away from the location. Officers exited their police vehicle to do a walkthrough of the property in reference to possible victims, destruction of property or shell casings.

Officer Olivo observed an individual later identified as THOMAS enter the Shell gas station parking lot from the Southern Avenue side. Officer Olivo noticed that the individual had a large bulge underneath his jacket; Officer Olivo noticed that THOMAS had his arms over the large bulge as if to keep it close to his body.  Officer Olivo then observed THOMAS join a group that was standing in front of the Shell gas station convenience store, and immediately after joining the group THOMAS turned around and had the group look down at an item within his waist area.  At that point, the group appeared to become concerned and Officer Olivo observed as the group tried

3

to physically remove THOMAS from the Shell parking lot by frantically pulling on his arms and trying to walk away with THOMAS.  THOMAS disregarded the group and walked back to the front of the Shell gas station.

Based on the unusual large bulge in THOMAS's stomach area, along with the reaction of the group upon looking down towards THOMAS's stomach area and the fact that an individual had been shot across the street from the Shell gas station, Officer Olivo and Perez believed THOMAS was armed. Officer Olivo exited his police vehicle to stop THOMAS.  At that point, Officers Olivo and Perez observed THOMAS turn around and hand over an unknown item in a plastic what appeared to be a plastic bag from the front of waist area to W-1, who was behind THOMAS.  Sergeant T. Liberto from Prince George's County Police Dist. IV witnessed THOMAS hand a white grocery bag to W-1.  Officer Varone made contact with W-1 and retrieved the white grocery bag that THOMAS had handed to him.  The white plastic bag contained $3,927 in U.S. currency.

Officer Perez and Olivo stopped THOMAS and placed him in handcuffs. A protective pat down was conducted.  During the patdown, Officer Olivo immediately felt an object which, based on the Officer's training and experience felt like a plastic bag containing a large bulk amount of marijuana. The size of the bulge, THOMAS's location in an area well-known for illegal marijuana distribution, and its plain feel provided probable cause to believe that THOMAS was in possession of an illegal amount of marijuana. The item was removed from THOMAS's jacket and officers immediately recognized that the leafy green substance was consistent with physical characteristics of marijuana.  The amount of marijuana that THOMAS was in possession was well over the legal amount of marijuana that a single person can possess in the District of Columbia. Defendant

4

Thomas was placed under arrest and was transported to the 7 District Station for processing, where he was given a citation release.

Ultimately, 14.5 ounces of suspected marijuana (obtained a positive color reaction when tested by Officer Varone) were recovered from THOMAS's front jacket pocket, and $481 in U.S. currency and 1 scale with green leafy substance residue were recovered from his right pocket.

**November 3, 2021 Arrest**

On November 3, 2021, officers of MPD's 7th District crime suppression team along with members of the FBI and the ATF conducted an observation post with a clear view of the inside and outside of 4675 South Capitol St SW, known as "SC Discount Tobacco & Grocery" (hereinafter, "Tobacco Store").

At approximately 7:58pm, Special Agent Rianna Forcelli observed an individual in a red jacket, later identified as THOMAS, in front of the Tobacco Store holding a large amount of suspected marijuana in a large plastic baggie, as well as what appeared to be a small silver scale in his right hand (which he appeared to receive from an unidentified male in a black jacket). THOMAS appeared to place the scale on the ledge in front of him, reach into the large plastic baggie containing suspected marijuana, and appeared to weigh the suspected narcotic on the ledge in front of him. Shortly after, THOMAS put the large baggie of suspected marijuana under his left armpit, and held an empty small, clear plastic baggie in his hands. THOMAS then picked up the scale on the window ledge of the Tobacco Store, and dumped the suspected marijuana on the scale into the empty plastic baggie. SA Forcelli then observed THOMAS hand what appeared to be the silver scale back to unidentified black male in a black jacket. THOMAS then completed a narcotics transaction with an individual in a grey hoodie, and the individual in the grey hoodie and

THOMAS could be seen exchanging an unknown amount of U.S. currency. The individual in the grey hoodie then left the area.

Just a minute later, at approximately 7:59pm, SA Forcelli observed THOMAS approach the driver's side of a nearby dark colored sedan.  THOMAS opened the big plastic baggie of suspected marijuana by the driver's side of the sedan and again appeared to engage in an apparent drug transaction.  The dark colored sedan departed the area after approximately one minute.  The duration of time THOMAS spent at the sedan, THOMAS's observed actions by the vehicle, the fact that the occupants of the dark colored sedan did not exit the vehicle or patronize the business, and SA Forcelli's familiarity with prior apparent drug transactions conducted out of vehicles briefly stopping at that location all constituted indicia to SA Forcelli that THOMAS was engaged in another apparent transaction of illicit narcotics with an individual in the sedan.

Officers Hernandez, Perez, Varone and Olivo were working the evening tour of duty in full uniform in a marked police vehicle and responded to the parking lot of "SC Discount Tobacco & Grocery" in reference to the individuals congregating inside and outside the shop involved in the distribution of narcotics.  As officers drove into the parking lot, an unknown individual yelled out the "Twelve" which is commonly used to alert other individuals involved in criminal activity to cease their activity due to police presence in the area.

Officer Olivo exited the police vehicle and began walking towards the entrance of the Tobacco Shop when Officer Olivo observed an individual later identified as THOMAS wearing the red coat.  THOMAS was walking out of the Tobacco Shop with two clear plastic bags, one in each hand containing a green leafy substance, which Officer Olivo immediately recognized to be consistent with marijuana (and was later field tested positive for THC by Officer Varone).  Officer

Olivo noticed from his prior experience that the total amount in between the two bags was more than the legal amount allowed in the District of Columbia.  Officer Olivo stopped and secured THOMAS to further investigate the amount of Marijuana.

While Officers Olivo and Drake were securing THOMAS in handcuffs, THOMAS dropped one of the two bags of marijuana on the floor in an attempt to get rid of it.  Once it was determined that the amount of marijuana was over the legal amount, THOMAS was placed under arrest.  The marijuana recovered from THOMAS's right hand had a total weight of 5.2 ounces and the marijuana recovered from the ground that THOMAS dropped from his left hand had a total weight of 1.9 ounces.

Search incident to arrest, Officers recovered a black in color Sig Sauer handgun from the front of THOMAS's waistband.  The firearm was learned to be a Sig Sauer, Model P365 Xl, 9mm bearing serial number: 66A700271, loaded with 1 round in the chamber and 5 in the magazine that had a capacity to hold 12 rounds.  The firearm appeared to be fully functional, capable of expelling a projectile by means of an explosive action, has a barrel of less than 12 inches, and the ability to be fired by the use of a single hand.  A WALES/NCIC check conducted on the serial number of the firearm revealed that the firearm was reported stolen out of Alexandria, Virginia, on 08/01/2020.

Officers also recovered 0.5 of ounces of marijuana from THOMAS's right back pocket, $855 in US currency from his front left pant pocket, and $5 in US currency from his front right pocket.  The total amount of marijuana recovered from THOMAS on November 3, 2021, totaled approximately 7.6 ounces with packaging, which is more than the legal amount permitted in the District of Columbia.  The breakdown in currency in small denomination bills along with the

amount of marijuana recovered from Defendant Thomas was more consistent with distribution than personal consumption.

**December 28, 2021 Arrest**

On Tuesday, December 28, 2021, at approximately 7:25pm, MPD officers responded to 30th St and Hartford St SE, Washington DC, in reference to a shooting. Upon arrival MPD officers attempted to establish a crime scene in order to preserve evidence in reference to the shooting. While on scene, an individual later identified as THOMAS walked into the area at 2916 30th Street SE where officers were attempting to establish a crime scene. Officer Knight told THOMAS multiple times to leave the area and additionally attempted to guide THOMAS off the scene. THOMAS then made threats to physically harm Officer Knight.  THOMAS stated, "If I wasn't on this box, I'd smack the shit out of you." MPD Officers then attempted to place THOMAS under arrest.  THOMAS was instructed to put his hands behind his back when he started resisting arrest by refusing to put his arms behind his back and pulling his arms away from officers.

MPD officers ran THOMAS in WALES/NCIC which revealed the federal warrant for THOMAS.  THOMAS was then arrested.

**Procedural History**

On November 4, 2021, the defendant was charged in connection with the events on November 3, 2021, in D.C. Superior Court case 2021-CF2-6292 with one count of Carrying a Pistol Without a License.  The Honorable Renee Raymond found probable cause, but denied the government's hold request and placed the defendant on GPS monitoring.

On December 9, 2021, a grand jury for the District of Columbia returned an indictment charging the defendant with one count of Unlawful Possession with Intent to Distribute Marijuana,

in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D); one count of Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of Title 18, United States Code, Section 924(c)(1); and one count of Carrying a Pistol Without a License, in violation of Title 22, D.C. Code, Section 4504(a).

On December 28, 2021, the defendant was arrested by MPD after crossing a police line after a shooting, as described above.

On December 30, 2021, the Honorable Zia M. Faruqui scheduled an initial appearance for the defendant.   At that hearing, the government intends to orally move for detention pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) and 18 U.S.C. § 3142(f)(2)(A).

## **Relevant Legal Authorities**

This Court may detain a defendant upon motion of the government in a case that, as here, involves "any felony that is not otherwise a crime of violence that … involves the possession or use of a firearm …."  18 U.S.C. § 3142(f)(1)(E).

Here, there is a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(B) based on probable cause to believe Thomas committed a violation of 18 U.S.C. § 924(c)(1).  *See id.* ("an offense under section 924(c)…").  Accordingly, "Subject to rebuttal by the person, *it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community* if the judicial officer finds that there is probable cause to believe that the person committed the predicate 924(c) offense.  The indictment, standing alone, constitutes probable cause that the person charged committed the offenses charged and is "enough to raise the rebuttable presumption that no condition would reasonably assure the

safety of the community."  *Smith*, 79 F.3d at 1210; *accord United States v. Williams*, 903 F.2d 844, 844 (D.C. Cir. 1990).

As the D.C. Circuit has explained, "the presumption operate[s] at a *minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  *Alatishe*, 768 F.2d at 371.  But even if the burden of production is met, the presumption "does not disappear entirely," but rather "remains a factor to be considered among those weighed by the district court."  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). The government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight – even where it is presumed that those standards are satisfied.  Relevant to that ultimate determination are the usual factors under 18 U.S.C. § 3142(g) – namely, (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's past conduct and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Court may also detain a defendant upon motion of the government or the Court's own motion in a case that involves a "serious risk" that the defendant "will flee."  18 U.S.C. § 3142(f)(2)(A).  Where "risk of flight" is the basis for detention, the presumption of detention does not apply, but the government must only prove that no conditions will reasonably assure the defendant's appearance or community safety by a preponderance of the evidence standard – not clear and convincing evidence.  *See United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

## **ARGUMENT**

The government respectfully submits that there is no condition or combination of conditions that would assure the safety of the community or the defendant's appearance at future proceedings.  As noted, this is a presumption offense, and the presumption is aptly operative in this case based on the facts and circumstances of this defendant and his conduct, including the matters for which he was arrested thrice in recent weeks on October 28, 2021, November 3, 2021, and December 28, 2021.

## I.    <u>Nature and Circumstances of the Offenses Charged</u>

The nature and circumstances of the offenses charged weighs in favor of detention.  There is substantial evidence based on the defendant's conduct – and specifically, the approximately 14.5 ounces of marijuana recovered on October 28, 2021 by the Shell gas station, and the approximately 7.6 ounces of marijuana recovered on November 3, 2021 by the Tobacco Shop by the Exxon gas station – that the defendant is a repeat player at the open-air drug markets located at 4665 South Capitol Street SW and 4700 South Capitol Street SE, Washington DC, respectively.  The quantity seized from Thomas – 22.1 ounces of marijuana in all – and the total amount of cash currency seized – $5,268 – bear emphasis and are indications that he is trafficking in large quantities and amounts.  That Thomas has exhibited close familiarity with other individuals involved in the drug activity in this area – for instance, receiving a scale from another individual on November 3 and handing nearly $4000 in cash currency to another individual on October 28 – is further evidence that he routinely frequents the drug markets.  Most concerning of all, however, is the fact that these recoveries were made *within 5 days* and notwithstanding, or in the face of, his arrest and citation-release on October 28, 2021.  And Thomas himself was armed with a loaded, apparently stolen firearm on his person alongside his bags of marijuana, when stopped on November 3, 2021 at this

area that has been a hotbed of recent gun violence.  As noted, these twin markets across the street are the site of extraordinarily concerning violence, including repeatedly incidents of violence involving firearms in recent weeks and months that appear connected to the drug activity.

In short, the evidence – as reinforced by the grand jury's indictment – indicates that Thomas brazenly transacts for his livelihood in large distributor quantities of illegal narcotics and has not been deterred by seizures or even his own recent arrest.  Indeed, the arrest of December 28, 2021 – when Thomas allegedly engaged in threats against a police officer at a shooting crime scene, making reference to his GPS monitoring on his existing case – only reinforce that Thomas poses a danger to the community and that the restrictions thus far placed on him by his pending Superior Court case have had little deterrent effect on his reoffending.

## II.    Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly favors detention.  This case involves an indictment for which a grand jury found probable cause that Thomas was illegally distributing drugs on November 3, 2021, illegally possessed his firearm, and possessed that firearm in furtherance of his drug activity.  The markedly related events of October 28, 2021 – when an even larger quantity of the same controlled substance was found on Thomas at the gas station across the street, and he was seen passing a white plastic bag with an even larger quantity of cash currency to another individual – only provide further corroboration of what and why Thomas was in possession of the narcotics five days later.  The firearm, moreover, was recovered directly from Thomas's person.  And it was recovered from Thomas after not one, but multiple observations of him either openly transacting in or carrying illegal amounts of narcotics.

## III.    Defendant's History and Characteristics

The third factor, the history and characteristics of the defendant, similarly weighs in favor of detention.  This Court considers, among other factors, "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history." *United States v. Taylor*, 289 F. Supp. 3d 55, 69 (D.D.C. 2018).  This Court in considering pretrial detention "may also consider prior arrests or charges brought against a defendant, even when those actions did not result in convictions." *See id.* at 70.

Mr. Thomas has a lengthy criminal history.  Setting aside this case, Thomas has had at least 15 arrests spanning 2012 to date.

As an initial matter, the government's understanding is that Mr. Thomas has multiple pending criminal matters beyond this case – two citation-release possession with intent to distribute marijuana cases in D.C. Superior Court, and a disorderly conduct case in Ocean City, Maryland.  One of the pending D.C. cases involves Thomas's arrest on October 28, 2021, described above, for having 14.5 ounces of apparent marijuana.  The Ocean City matter appears to date back to 2015, and Thomas failed to appear on dates in August 2015, November 2015, January 2018, June 2020, and October 2020.

Thomas, moreover, has had at least five criminal convictions, and his convictions have encompassed assaultive or violent conduct towards members of the community.  Of note:

- Thomas has a 2017 conviction for Unlawful Entry in D.C. Superior Court case 2016-CF3-12962, for which he was sentenced to 180 days' confinement, of which 60 days were suspended.  As part of his plea, Thomas admitted that the government would have proven beyond a reasonable doubt that an employee of Dunkin Donuts had asked him

13

to leave the store two times; that Thomas refused to leave; and that Thomas said, "Ain't nobody buying nothing from here" and blocked the cashiers spot with his body, preventing customers from accessing the counter to order food. Thomas was charged by complaint in the case with Attempted Robbery, for which a judge had found probable cause.

- Thomas has a 2017 conviction for Second-Degree Theft in D.C. Superior Court case 2015-CF3-17332, for which he was sentenced to 180 days' confinement, to run consecutively to his sentence in 2016-CF3-12962. As part of his plea, Thomas admitted that the government would have proven beyond reasonable doubt that he approached the victim, who was standing near a cash register attempting to check out at a Wine and Liquor Store, snatched U.S. currency out of his hand, and fled. Thomas had been indicted by a grand jury on one count of Robbery.

- Thomas has two 2016 trial convictions for Contempt/Condition of Release Violations in D.C. Superior Court cases 2016-CMD-8268 and 2016-CMD-8153 – based on two separate violations, three days apart, of his curfew imposed in 2015-CF3-17332. In each case, Thomas was sentenced to 180 days, with 120 days suspended, and supervised probation of 6 months; his probation was terminated unsuccessfully in September 2017.

- Thomas has a 2012 conviction for Simple Assault in D.C. Superior Court case 2012-CMD-6528, for which he was sentenced under the YRA to 45 days, with 45 days suspended, and supervised probation of 1 year; his probation was terminated unsuccessfully in April 2013. According to the Gerstein, while on a metro station

14

platform, Mr. Thomas struck the victim with a closed fist on the left side of the victim's face.

Those five convictions, however, understate the extent of defendant's contacts with the criminal justice system. Thomas has had at least four other charged cases dismissed for want of prosecution. Those cases include 2017-CF3-1699, a D.C. Superior Court case in which a grand jury returned an 8-count indictment reflecting probable cause charging Thomas with conspiracy to commit a crime of violence—offenses committed during release; burglary II-offenses committed during release; robbery while armed—offenses committed during release; possession of a firearm during a crime of violence—offenses committed during release; assault with intent to commit robbery while armed—offenses committed during release; possession of a firearm during a crime of violence—offenses committed during release; assault with a dangerous weapon—offenses committed during release; and possession of a firearm during a crime of violence—offenses committed during release. The facts involve Thomas allegedly demanding promethazine with codeine – a controlled substance – while his co-conspirator held a victim at gunpoint at a CVS Pharmacy, before walking out when they were told there was none. They also include 2015-DVM-1365, in which he was charged with simple assault, obstructing/preventing/interfering with reports for assistance from law enforcement, and attempted threats to do bodily harm; 2015-CMD-9846, in which he was charged with shoplifting; and 2014-CMD-20815, in which he was charged with simple assault and threats to do bodily harm.

Thomas also has a record of non-compliance with conditions of release that underscore that he poses a substantial flight risk. As noted, two of his convictions involve violations of court-ordered release conditions, and his pending case in Maryland entailed failures to appear on at least

five occasions since 2015. Thomas has a history of bench warrants – one was issued in November 2017 in 2017-CPO-5322, one from August 2015 in 2015-DVM-1365, and one in February 2015 in 2014-CMD-20815. And Thomas has repeatedly been subjected to pretrial detention because of recidivating while on release; for instance, he was detained in 2016-CF3-12962 because it was the *fourth* pending matter at that time. The defendant appears to have been detained in 2017-CF3-1699 for approximately seven months.

The flight risk concerns, moreover, are all the more weighty given that ATF agents had little success locating the defendant at his purported address upon issuance of the grand jury indictment in this case. Thomas, given his GPS monitoring, provided Superior Court Pretrial with an address at 28th Street, SE. However, agents conducting surveillance on December 14, 2021, obtained negative results, and noted from GPS information from November 28, 2021 to December 11, 2021, that Thomas had not appeared to stay or reside at the 28th Street address since approximately December 8, 2021, instead showing frequent pings in Alexandria, Virginia.

All the above concerns are only augmented by some of the facts about the defendant uncovered in the investigation to date. The defendant appears to have no stable, legal employment; his day-to-day activities appear to revolve around his engagement in the drug trade. And that concern is further heightened by his apparently shifting residences as well as the recovery of significant amounts of cash upon his arrests. All these facts and characteristics unique to this defendant underscore that he poses a pronounced risk of non-appearance should he be released.

## IV.   <u>Danger to the Community</u>

Finally, the nature and seriousness of the danger to any person or the community posed by the defendant's release are grave. The defendant injects large quantities of illegal narcotics into

the community apparently as his livelihood – and based on the events of November 3, 2021, has carried at least one firearm in furtherance of that drug activity.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders and abide by appropriate release conditions.  The defendant has none of the stabilizing forces of gainful employment, strong community ties, or even a fixed, stable residence that could rebut the applicable presumption of detention.

## CONCLUSION

The Court should grant the government's motion to detain the defendant, Malik Countee Thomas, pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By: */s/ Candice C. Wong*
CANDICE C. WONG
Assistant United States Attorney
D.C. Bar Number 990903
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7849
Email: candice.wong@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2021, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

/s/ Candice C. Wong
CANDICE C. WONG
Assistant United States Attorney
