## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **MALIK COUNTEE THOMAS**, <br><br> Defendant. | Case No. 21-cr-724 (CRC) |

## <u>OPINION AND ORDER</u>

Defendant Malik Countee Thomas is under indictment for possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), (b)(1)(D), carrying a firearm during a drug trafficking offense, 18 U.S.C. § 924(c)(1), and carrying a pistol without a license, D.C. Code § 22-4504(a).  <u>See</u> Indictment, ECF No. 1.  On January 5, 2022, following a detention hearing, a Magistrate Judge ordered Mr. Thomas to be released into the custody of a third-party custodian pending his trial.  <u>See</u> Mag. J. Proposed Order, ECF No. 7; 1/5/2022, Minute Order.  The government appeals the Magistrate Judge's order, which the Court stayed while it considered the appeal.  <u>See</u> 1/7/2022, Minute Order.  Having reviewed the record and received argument and evidentiary proffers from both sides, the Court orders that Thomas be detained pending trial.

### I.   Background

This case arises out of Thomas's arrest on November 3, 2021.  The arrest resulted from a multi-agency investigation of open-air drug markets near Exxon and Shell gas stations on South Capitol Street in Washington, DC.  According to the government, the area has been plagued by frequent drug-related activity and, in the last three months of 2021, experienced a series of armed assaults and shootings.

Thomas was arrested two other times during this period of mayhem.  First, he was arrested on October 28 in front of the Shell gas station.  Police recovered 14.5 ounces of

marijuana and $481 in currency from his person.  Thomas was given a citation with an appearance date in January 2022.  The November 3 arrest came second; officers arrested Thomas at a shop near the Exxon station, this time seizing about 7.6 ounces of marijuana, $860 in cash, and a loaded 9mm pistol.  Finally, Thomas was arrested again on December 28, in a separate area of southeast D.C.  After engaging in an argument with officers at a shooting crime scene, police placed him in handcuffs; a law enforcement database search revealed his recent criminal activity, and Thomas was arrested.

On November 4, 2021, Thomas appeared in D.C. Superior Court in connection with the November 3 arrest.  The Superior Court Judge, who apparently did not have information about the October 28 arrest before her, denied the government's request for pretrial detention and placed Thomas on GPS monitoring.  On December 9, a federal grand jury indicted Thomas on one count of unlawful possession with intent to distribute marijuana, one count of carrying a firearm during a drug trafficking offense, and one count under D.C. law of carrying a pistol without a license.  The Magistrate Judge scheduled an initial appearance on December 30, 2021 and heard initial arguments on the government's motion for pretrial detention; the parties returned for a continued detention hearing on January 5, 2022.

After the January 5 detention hearing, the Magistrate Judge issued a proposed release order, which would place Thomas into the custody of a third-party custodian as part of the Pretrial Services Agency's High Intensity Supervision Program.  See Mag. J. Proposed Order; 1/5/2022, Minute Order.  But, at the government's request, the Magistrate stayed the release order for two days.  The government appealed the release order and sought a further emergency stay of the order, Emergency Mot., ECF No. 8, which this Court granted, see 1/7/2022 Minute

Order.  The Court heard the appeal on January 11, 2022, giving each side an opportunity to present argument and additional evidence relevant to the Court's detention determination.

## II.    Legal Standards

A court may order that a defendant be detained pending trial on the motion of the government in a case involving "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm."  18 U.S.C. § 3142(f)(1)(E).  To order detention, a court must find that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(1).  The government bears the burden of showing that the defendant is a flight risk by a preponderance of the evidence, or that he poses a danger to the community by clear and convincing evidence.  See United States v. Simpkins, 826 F.2d 94, 96 (D.C. Cir. 1987).  The factors considered in this analysis include:  (1) the nature and circumstances of the offenses; (2) the weight of the evidence; (3) the person's history and characteristics; and (4) the danger to the community that would be posed by the person's release.  See § 3142(g).

Here, moreover, Thomas's § 924(c) charge carries a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(B).  "Once a rebuttable presumption is created, it imposes a burden of production on the defendant to offer contrary credible evidence."  United States v. Ali, 793 F. Supp. 2d 386, 388 (D.D.C. 2011) (citing United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985)).  But even if the presumption is rebutted, it "remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained."  Id.

## III.   Analysis

Applying the factors set forth in 18 U.S.C. § 3142(g) in light of the presumption of detention, the Court finds by a preponderance of the evidence that no condition or combination

of conditions would ensure Thomas's appearance or, by clear and convincing evidence, would ensure the safety of the community if he were released.  Each § 3142(g) factor weighs in favor of detention.

    A.  <u>Nature and Circumstances of the Offense</u>

First, the charged offenses stem from Thomas's November 3 arrest and involve "a controlled substance" (marijuana) and a "firearm."  § 3142(g)(1).  The facts proffered by the government indicate that Thomas trafficked marijuana, while possessing a loaded pistol, in a specific area of D.C. that experienced a spate of gun violence around the same time of his arrests. The November 3 recoveries of 7.6 ounces of marijuana and $860 in currency seized from Thomas also occurred within five days his October 28 arrest involving 14.5 ounces of marijuana and $481 in currency.  Thomas has not been deterred by the drug seizures or his arrests.  Indeed, he has been arrested three times in recent months, days before and less than two months after his arrest for the present offenses.

Thomas argues that the amount of marijuana recovered in this offense is relatively low and the charged offenses are not crimes of violence.  Perhaps so.  But considering the full context of his trafficking drugs with a loaded gun, specifically in an area with a high level of gun violence in the same few-month timeframe, this factor weighs in favor of detention.

    B.  <u>Weight of the Evidence</u>

Second, this case involves an indictment for which a grand jury found probable cause that Thomas illegally distributed drugs on November 3, 2021, illegally possessed a loaded firearm, and carried that firearm during his drug trafficking activity.  Police recovered the firearm directly from Thomas's person, which he does not contest.  This factor also favors detention, though as Thomas notes, it is less important than the others.

C. <u>History and Characteristics</u>

On the third factor, courts consider "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." <u>United States v. Taylor</u>, 289 F. Supp. 3d 55, 69 (D.D.C. 2018). Thomas has a lengthy criminal history, with 22 prior arrests and at least five prior convictions in D.C. Superior Court. Pretrial Servs. Rep. at 1, ECF No. 3. Again, the arrests include three in recent months, one of which was during a pending felony case while he was on heightened pretrial supervision. <u>Id.</u> at 4. The prior convictions include one for assault in 2012, two for contempt/conditions of release violations in 2016, an unlawful entry offense in 2017, and another for second-degree theft in 2017. <u>Id.</u> at 4–6. He also has other pending criminal matters in addition to this case, including one in D.C. Superior Court related to his October 28, 2021 arrest, and another in Maryland for disorderly conduct.

Moreover, Thomas has a track record of noncompliance with conditions of release, even beyond the two 2016 convictions just noted. Since 2015, Thomas has failed to appear at least four times in an Ocean City, Maryland case, and he has had at least three bench warrants issued against him (two in 2015, one in 2017). <u>Id.</u> at 2–4. And as mentioned, he was arrested less than two months after his arrest related to this case. The government also contends that, at the initial detention hearing before the Magistrate Judge, Thomas represented that he could not resolve his Ocean City, Maryland warrant because he could not leave his home between December 17 and December 28, 2021; however, the government and Thomas's pretrial services officer state that GPS data indicates he was at the MGM Grand Casino in Fort Washington, Maryland on December 23, 2021. Although the Court does not place substantial weight on Thomas not

5

resolving the Ocean City warrant, it finds that his apparent misrepresentations about his whereabouts cast doubt on his candor with Pretrial Services, which goes to his ability to comply with Court orders if he were released.

Thomas maintains that he has strong ties to the District and family support, but even if true, those considerations cannot overcome his criminal history and record of non-compliance. In sum, this factor weighs decidedly in favor of detention.

D.  <u>Danger to the Community</u>

This final factor "encompasses much of the analysis set forth above, but it is broader in scope." <u>Taylor</u>, 289 F. Supp. 3d at 70.  The Court may, for example, "consider prior arrests or charges brought against a defendant, even when those actions did not result in convictions." <u>Id.</u> In addition to his repeated run-ins with the criminal justice system summarized above, Thomas has had other charged cases dismissed for want of prosecution.  Most notably, these include a 2015 domestic violence charge in which he allegedly threatened to kill the mother of his children and the kids; this conduct violated a civilian protection order ("CPO").  <u>See</u> Emergency Mot. at 21–22.  The same individual also brought a 2017 CPO matter, for which one of Thomas's bench warrants was issued.  And, during his most recent December 28 arrest, Thomas engaged in an argument with a police officer at a shooting crime scene, telling the officer that if did not have a GPS monitor on, he would "smack the shit out of" the officer.  <u>See id.</u> at 9.

Finally, the Court will address Thomas's proposed third-party custodian, a close friend of his.  Although the Pretrial Services Agency approved this individual as a custodian in light of the pending release order, it maintains its objection to Thomas's release.  The agency's report to the Court states that the risks of failure to appear and of re-arrest are high.  <u>See</u> Pretrial Servs. Rep. at 1.  During the proceedings before the Magistrate Judge, the third-party custodian testified that

she had no concerns for her safety or that of her children or family.  She further testified that she

has an alarm system in her home with indoor cameras, which she is able to monitor during the

day.  However, this individual also stated that she works fulltime outside of the house.  (Defense

counsel subsequently acknowledged to the Court that the individual holds two jobs, as a building

concierge and a hairdresser.  See Def. Supp. to Resp. to Gov't Appeal at 1, ECF No. 10.)  Given

her absence for most of the day, and Thomas's history recounted above, the Court has serious

doubts about the proposed third-party custodian's ability to adequately monitor Thomas's

compliance with release conditions.

Thus, this factor weighs in favor of detention as well.

\*    \*    \*

At bottom, even if Thomas could rebut the presumption of detention applicable here,

weighing all the above factors and still considering the presumption among the other factors, the

Court concludes that the government has carried its burden of showing that pre-trial detention is

warranted.  No condition, or combination of conditions, would ensure the defendant's continued

presence before the Court or the safety of the community.

**IV.    Conclusion**

For these reasons, it is hereby

**ORDERED** that defendant Malik Countee Thomas be detained pending trial in this

matter.


 

 

 

 

<u>                                       </u>
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>January 24, 2022</u>